STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-460

RAYMOND T. POUSSON

VERSUS

UNITED PARCEL SERVICE

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT #3
PARISH OF CALCASIEU, NO. 03-09231
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Brenda Lavergne Mistrot
Law Offices of Nan M. Landry
2014 West Pinhook Road, Suite 403
Lafayette, LA   70508
(337) 234-7200
COUNSEL FOR DEFENDANT/APPELLEE:
        United Parcel Service

Kevin L. Camel
Cox, Cox, Filo, Camel & Wilson
723 Broad Street
Lake Charles, LA   70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLANT:
        Raymond T. Pousson

AMY, Judge.

In this workers' compensation matter, the claimant asserts that he was injured while employed as a delivery driver. The employer has paid all medical expenses related to the injury and initially paid the claimant weekly benefits. However, the employer terminated the benefits when the claimant failed a drug screen which was given after the claimant's treating physician cleared the claimant to return to work. The workers' compensation judge dismissed the claims for indemnity benefits after the work clearance, penalties and attorney's fees, but ordered the employer to continue to pay any medical fees related to the accident. For the following reasons, we affirm.

**Factual and Procedural Background**

According to the record, on September 10, 2002, Raymond Todd Pousson was employed by the United Parcel Service ("U.P.S.") as a delivery driver, when he sustained an injury to his right hip while getting out of the seat of his delivery truck. U.P.S. and its insurer, Liberty Mutual, have paid for all medical treatment related to the accident, including two arthroscopic surgeries. After the injury, U.P.S. also began paying Mr. Pousson indemnity payments until August 28, 2003. On that date, his orthopedic surgeon, Dr. John Noble, had an appointment with the claimant and released him to return to work without restrictions.

Previously, in June 2003, Mr. Pousson voluntarily entered into an inpatient drug rehabilitation program for a cocaine addiction; the program lasted for approximately thirty days. U.P.S. paid for the inpatient program as well as an out-patient treatment program thereafter. In connection with his treatments, Mr. Pousson submitted to a drug screen on September 23, 2003, and tested positive for cocaine. Mr. Pousson testified that after he received the positive results, he received a letter

stating that he had been terminated due to the positive drug screen and that his workers' compensation benefits were terminated without explanation.

Mr. Pousson filed a disputed claim for compensation with the Office of Workers' Compensation on December 23, 2003. Although U.P.S. initially asserted that its termination of the claimant's indemnity benefits was due to his "release[] to return unrestricted to work on 8/28/03[,]" it later amended its answer to assert that the claimant's benefits were terminated due to his failure of his "return to work drug screen after his release to return to work without restrictions[.]" Following a hearing, the workers' compensation judge dismissed Mr. Pousson's claim for any further indemnity benefits after August 28, 2003, but ordered U.P.S. to continue to pay his medical expenses related to the accident. In oral reasons for ruling, the workers' compensation judge concluded that Dr. Noble had released the claimant to return to work without restrictions on August 28, 2003, and that U.P.S. had intended to put the claimant back to work in some capacity prior to his failure to pass the drug screen.

The claimant appeals, asserting the following assignments of error:

1. The OWC judge erred in finding that Liberty Mutual met its burden of proof on each of the requirements for the application of Louisiana Revised Statutes 23:1221(3)(g).

2. The OWC judge erred in placing the burden of proof on claimant Raymond Pousson with respect to the elements of proof required for the application of Section 23:1221(3)(g).

3. The OWC judge erred in drawing all inferences and resolving all doubts in the light most favorable to Liberty Mutual, the party that bears the burden of proof, rather than resolving doubts and drawing inferences in favor of the claimant.

4. The OWC judge erred in finding that the document introduced by Liberty Mutual met the definition of a "written and promulgated substance abuse policy" as defined by the applicable statutes and this Honorable Court.

2

**Discussion**

Because each of the assignments of error identified by the claimant relate to whether the trial court was correct in its application of La.R.S. 23:1221(3)(g), we will consider them together. The claimant offers numerous arguments on appeal in support of his assertion that La.R.S. 23:1221(3)(g) is not applicable to the instant matter. He alleges that U.P.S. never offered the claimant a position following his accident, that the claimant was never actually released to return to work, that U.P.S. did not maintain a written drug policy that required drug testing in order to return to work, that the drug test was not administered pursuant to La.R.S. 23:1221(3)(g), and that the positive drug screen did not prevent the claimant from qualifying for a position with U.P.S.

To begin, we consider La.R.S. 23:1221(3)(g), which states:

> When an injured employee has been released to return to work with or without restrictions, and the employer maintains an established written and promulgated substance abuse policy which requires employer-administered drug testing prior to employment or return to work, upon the employee's failure to meet the requirements of such employer's established policy and inability to qualify for the position for that reason, the obligation for all benefits pursuant to this Chapter, with the sole exception of the obligation to provide reasonable and necessary medical treatment, shall be terminated and the employee shall be subject to the terms and conditions established in the employer's promulgated drug testing policy and program. The provisions of this Subparagraph shall not apply to prescription medication prescribed for the employee in the dosages so prescribed by a physician.

The workers' compensation judge determined that La.R.S. 23:1221(3)(g) was applicable in the instant situation and dismissed Mr. Pousson's claims for indemnity benefits, penalties and attorney's fees while ordering that U.P.S. "continue to pay medical benefits arising out of and relating to the injury sustained as a result of the accident of September 10, 2002." A workers' compensation judge's factual findings

in a workers' compensation case will not be overturned on appeal absent manifest error. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. "In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at 556.

Our review of the record indicates that the parties have not disputed the payment of the claimant's medical expenses. The parties also do not dispute that U.P.S. terminated the claimant's indemnity benefits on August 28, 2003, following an appointment with Dr. Noble. In his deposition, Dr. Noble stated that he "felt that [the claimant] had reached maximum medical improvement, and he had a five percent impairment of the hip." Dr. Noble also stated that he released the claimant to return to his job as a U.P.S. "deliverer" without restriction. Although he could not specifically recall whether the claimant stated that he would be returning to his former delivery position or to a lighter duty position, Dr. Noble stated that he remembered the claimant telling him that wanted to return to work and that he was "capable of doing it."

The record also reveals that the claimant had participated in an inpatient drug rehabilitation program at U.P.S.' expense from June 10, 2003 until July 9, 2003 and that he subsequently participated in an outpatient program. The claimant admitted that on two occasions he violated the rules and regulations of the inpatient rehabilitation program, and that he had relapsed and used cocaine during his outpatient treatment.

Dwayne Adams, an operations supervisor at U.P.S., testified that due to the claimant's participation in a drug rehabilitation program, and his subsequent failure

4

of a drug screen, he could not have returned to work in his capacity as a delivery driver, but would have instead been given temporary alternate work. The claimant also testified that after his rehabilitation program, he spoke with Gerry Hayden, the designated U.P.S. representative for the claimant's drug rehabilitation program. The claimant stated that, based on their discussion, he thought that U.P.S. would create a light duty job for him when he was ready to return. He also stated that he had told his outpatient program counselor that he was going to be returning to work.

The claimant testified that he was aware that U.P.S. had a drug policy and that he was aware that he would have to take a drug screen before returning to work. He also stated that he was aware that U.P.S., as part of its rehabilitation program, could require him to submit to a drug screen at any time throughout the next year. A copy of a document titled "UPS Drug Alcohol Policy Section 2" was entered into evidence.[1] That policy prohibits employees from going on duty with a controlled

---

[1] This "UPS Drug Alcohol Policy Section 2" states, in relevant part:

At UPS we have a vital interest in the safety of our employees and the general pubic. By maintaining the highest standards for our employees we ensure the efficient and safe operations necessary to provide reliable services to our customers. It is well recognized that individuals who use illicit drugs or abuse alcohol are more likely to have workplace accidents, incur greater amounts of lost time and perform their job requirements in a substandard manner.

There is an even greater concern at United Parcel Service because of the nature of our service. Therefore, it is our intent to continue to promote a safe and secure work environment free of illicit drugs and alcohol abuse or use.

We maintain a drug-free and alcohol-free workplace. We maintain an Employee Assistance Procedure to help our employees who may be suffering from substance abuse. Any employee may volunteer for this service. Our Employee Assistance Procedure assures that employees who develop drug or alcohol problems will have access to medical evaluation and appropriate community-based treatment.

We prohibit the illegal possession, use, sale, distribution, dispensing, transfer or manufacturing of a controlled substance or alcohol while at work, on company property, or while on company business. No employee is permitted to go on duty or remain on duty if he or she possesses or has the presence of an unauthorized controlled substances [sic] or alcohol in their system. In addition, employees are not permitted to go on duty or remain on duty if they may be impaired by the presence

5

substance present in their system. It also requires a "fitness-for-duty medical evaluation" where U.P.S. has been given reasonable cause to believe that an employee has violated the policy. Mr. Adams testified that U.P.S. made new employees aware of the policy upon their employment.

After his August 28, 2003 release to return to work from Dr. Noble, the claimant was required by U.P.S. to take a drug screen, which was collected on September 23, 2003. The record contains the deposition of Dr. H. D. Belk, the Medical Director and Medical Review Officer for National Diagnostics, Inc.[2] Dr. Belk's records state that the nature of the test was a "return to duty" substance abuse exam. Documents from the laboratory that performed the testing, Northwest Toxicology, also state that the reason for the test was for "Return to Duty" purposes. U.P.S. had reserved the right to require a "fitness for duty" medical evaluation in its drug and alcohol policy in order to maintain a drug- and alcohol-free workplace. The parties do not dispute that the claimant failed the drug screen.

The evidence related above supports the workers' compensation judge's determinations that upon the claimant's release to return to work without restrictions

---

of an authorized [sic] controlled substance.

We also require, if necessary, a fitness-for-duty medical evaluation any time an employee, by his or her actions or behavior, gives UPS reasonable cause to determine whether an employee has violated the UPS Drug and Alcohol Policy.

United Parcel Service will comply with all U.S. Department of Transportation rules and regulations concerning controlled substances and alcohol testing for government mandated classifications of employees.

[2] Dr. Belk testified that National Diagnostics, Inc. provides third-party administrative services for companies in connection with drug testing including collection of drug samples and scheduling lab analyses. In the instant matter, Dr. Belk stated that his company did not perform the laboratory analysis, but instead received all nonnegative test results from the laboratory which did perform the analysis including Mr. Pousson's test results. A representative of National Diagnostics then contacted Mr. Pousson, verified his identity, and offered to retest the sample. Dr. Belk stated that the claimant declined to have the sample tested again and stated that he had used cocaine five days before his drug screen.

6

on August 28, 2003, U.P.S. intended to allow him to return to work in some capacity, but that the claimant failed the drug test necessary for him to participate in U.P.S.'s drug-free work environment. Based on our review of the record, we find no error in the workers' compensation judge's dismissal of Mr. Pousson's claims for indemnity benefits, penalties and attorney's fees. Accordingly, we affirm the judgment of the Office of Workers' Compensation.

## DECREE

For the foregoing reasons, the workers' compensation judge's ruling is affirmed. All costs of this proceeding are assigned to the plaintiff-appellant, Raymond T. Pousson.

**AFFIRMED**.